*NOT FOR PUBLICATION*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| In re:<br>JOHN DAHLGREN<br>    Debtor. | :<br>:<br>:<br>: | Chapter 13<br>Case No. 09-18982 (RTL) |
| JOHN DAHLGREN,<br>    Plaintiff-Appellant,<br>v.<br>REGINA PALONE,<br>    Defendant-Appellee. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | **OPINION**<br><br><br>Civil Action No. 10-1988 (FLW) |

**WOLFSON, United States District Judge**:

Presently before the Court is the appeal of John Dahlgren ("Dahlgren" or the "Debtor") from an order from Bankruptcy Judge Raymond T. Lyons of the United States Bankruptcy Court for the District of New Jersey ("Bankruptcy Court") imposing sanctions against his counsel. For the following reasons, the Debtor's appeal is denied and the order of the Bankruptcy Court is affirmed.

### I. Background and Procedural History

Except as otherwise stated, neither Dahlgren nor Defendant-Appellee Regina Palone ("Palone") contest the facts set out in the Bankruptcy Court's opinion below ("Bankruptcy Opinion").[1] Since the Court only writes for the benefit of the parties, the Court provides a brief summary of the relevant facts.

---

[1] The Bankruptcy Opinion to which this Court refers is the opinion dated November 9, 2009, in which the Bankruptcy Court ruled that Debtor's plan was not confirmable.

1

Dahlgren and Palone have known each other for many years, and they began a romantic relationship in the mid-1990s. Although the couple never married, over the course of their relationship they purchased several properties together. On August 3, 2001, Dahlgren and Palone purchased the property at issue in this motion, a residential/farm property in Monmouth County, New Jersey (the "Property"). The couple financed the purchase of the Property with a cash contribution by Dahlgren and with two separate mortgages. The first mortgage names both Dahlgren and Palone as the mortgagors, and the second names only Palone. The deed to the Property lists both parties together, with no indication of ownership percentage.

The couple resided on the Property for some years, with Dahlgren primarily maintaining and managing the Property by contributing capital and making improvements to it. In 2005, the relationship between the couple soured. Palone left the Property and acquired her own separate residence. Three years of dispute ensued, and in 2008, Palone filed a partition action in the New Jersey Superior Court ("State Court").

After Dahlgren failed to oppose Palone's action,[2] on October 14, 2008, the State Court approved Palone's request for a partition of the Property ("Sale Order"). Subsequently, on March 13, 2009, the State Court issued an order that Dahlgren show cause as to why the Sale Order should not be enforced. Dahlgren's Counsel, but not Dahlgren, appeared at the cause hearing, and on March 24 2009, the State Court issued an order reaffirming the Sale Order. Through the Sale Order, the State Court directed the

---

While this opinion predates the Bankruptcy Court's sanctions ruling, it sets forth the factual and legal predicate for the Bankruptcy Court's subsequent sanctions ruling.

[2] Dahlgren filed an answer and counterclaim to Palone's motion that the State Court refused to accept because it was untimely filed.

sale of the Property, with the proceeds placed into a trust account until the appropriate allocation of the proceeds between Dahlgren and Palone could be determined at a later hearing. Pursuant to the Sale Order, Palone sought and obtained an offer on the Property, but had not yet executed the sale when Dahlgren filed for bankruptcy.

On April 9, 2009, Dahlgren filed a petition in the instant chapter 13 bankruptcy, automatically staying all other legal proceedings involving Dahlgren, including the State Court proceedings of the Sale Order and the scheduled allocation hearing. Dahlgren's petition treated Palone as a creditor as opposed to co-owner of the Property. In response to Dahlgren's bankruptcy petition, Palone filed a proof of claim of her co-ownership interest in the Property with the Bankruptcy Court, as well as a motion to dismiss the petition as a bad faith filing.

Palone's counsel sent Debtor's counsel a safe harbor letter on May 6, 2009. That letter indicated that "[t]he filing of the petition and proposed plan, in light of my client's opposition, is not warranted by existing law and non-frivolous argument for the extension of the law. The filing is an attempt to end run around the *res judicata* and collateral estoppels effect . . . of the State Court Orders." The letter further indicated that "[t]he Bankruptcy Court also has no jurisdiction over the controversy by reason of the Rooker-Feldman doctrine."[3]

On November 9, 2009, the Bankruptcy Court issued the Bankruptcy Opinion, denying both Palone's motion to dismiss, and Dahlgren's proposed chapter 13

---

[3] While Palone did not provide this Court with a copy of this letter in connection with this appeal, and has only quoted from it in her brief, Dahlgren has not disputed that the letter was sent or its contents. To be sure, the Court quotes the letter here for context only. The contents of the letter do not factor into this Court's analysis of the propriety of the Bankruptcy Court's sanctions ruling.

3

reorganization plan.  In its Opinion, the Bankruptcy Court acknowledged that "the timing of the Debtor's bankruptcy petition and apparent forum shopping [were] suspicious," but nonetheless held that the filing "did not rise to the level of bad faith as construed by the Third Circuit."  Bankruptcy Opinion at 8.  In addition, the Bankruptcy Court reasoned, dismissal at that stage was not in the interest of Dahlgren's other creditors.

Importantly, the Bankruptcy Court further held that Dahlgren's plan proposed to treat Palone's interest in the Property as that of a creditor in bankruptcy, rather than that as a co-tenant owner, rendering the plan "patently unconfirmable."  Id. at 16.  The Bankruptcy Court reasoned that it "would not be justified in confirming a plan that abrogates the [State Court Sale Order]."  Id. at 14.  In the Bankruptcy Court's view, "[n]either the Bankruptcy Code nor existing state law authorize[d] the remedy proposed in Debtor's plan, i.e., the forced sale to him of [Palone's] interest in the farm.  The Debtor missed his opportunity to ask the state court to fashion such a remedy and the state court has already ordered the sale of the farm."  Id. at 15-16.  The Bankruptcy Court did not dismiss Dahlgren's case at that time because it was "the first instance in which the Debtor . . . failed to submit a confirmable plan …."  Id. at 16.  Instead, the Bankruptcy Court gave Dahlgren leave to file another reorganization plan.

Dahlgren filed a modified chapter 13 reorganization plan on November 24, 2009.  Dahlgren's modified plan proposed the same treatment of Palone's interest in the Property as under the prior plan.  As a result, the Bankruptcy Court again denied confirmation of Dahlgren's modified plan, and instead, on December 15, 2009, issued an order vacating the automatic stay with regard to the State Court action.  That same day, Palone moved for sanctions against Debtor's counsel.

4

Agreeing with Palone that sanctions were appropriate, the Bankruptcy Court imposed sanctions on Debtor's counsel for attorneys fees and costs, noting, *inter alia*:

> The fact that I said that the petition wasn't filed in bad faith, which was an extremely close call, and that I didn't dismiss for bad faith because it wasn't in the interest of creditors, doesn't absolve you from 9011 sanctions.

December 15 Hearing Tr., 24:4-8. The Bankruptcy Court subsequently held a hearing to determine the amount of the sanctions, and concluded that $12,500 in fees, as well as $400 in costs, were appropriate.[4]

Thereafter, the parties returned to State Court and, ultimately, settled the partition action in July 2010. Per the settlement, the parties entered into a consent judgment that allotted Palone $57,500. The consent judgment, further, dictated that the property be either refinanced or sold by July 21, 2010.[5]

Dahlgren now appeals the Bankruptcy Court's sanctions ruling. For the following reasons, the Court concludes that the Bankruptcy Court did not abuse its discretion in imposing sanctions.

## II. Jurisdiction

Jurisdiction of the district courts over appeals from orders of bankruptcy courts is governed by 28 U.S.C. § 158(a), which provides, in relevant part, that "[t]he district courts of the United States shall have jurisdiction to hear appeals (1) from final

---

[4] The date of the hearing is not clear from the record, although the sanctions order was entered on February 16, 2010. In addition, the parties have not provided the Court with copies of any papers submitted to the Bankruptcy Court in connection with the sanctions hearing.

[5] In addition, per the consent judgment, Dahlgren dismissed three appeals in the related cases of 10-1985, 10-0111, and 10-2159 that were pending before this Court. Those appeals related to the substantive rulings made by the Bankruptcy Court, including its rulings in its November 9, 2009 opinion.

5

judgments, order, and decrees . . . of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title." 28 U.S.C. § 158(a). An appeal under 28 U.S.C. § 158(a) "shall be taken in the same manner as appeals in civil proceedings generally are taken to the courts of appeals from the district courts . . . ." 28 U.S.C. § 158(c)(2).

### III.   Standard of Review

When reviewing a bankruptcy court's sanctions decision, the standard of review is determined by the nature of the issues presented on appeal. In re Schaefer Salt Recovery, Inc., 542 F.3d 90, 97 (3d Cir. 2008). Factual determinations reviewed on appeal should not be set aside unless found to be "clearly erroneous." In re Continental Airlines, 150 B.R. 334, 336 (D. Del. 1993) (citing Bankruptcy Rule 8013 and In re Morissey, 717 F.2d 100, 104 (3rd Cir. 1983)). A factfinder, rather than a reviewing body, is generally in a better position to make judgments about the reliability of evidence; specifically, the reviewing body only acts pursuant to a written record, while the factfinder is able to evaluate the credibility of a live witness. See Concrete Pipe & Prods. v. Constr. Laborers Pension Trust, 508 U.S. 602, 113 S. Ct. 2264, 2280 (1993). In turn, review of facts under the "clearly erroneous" standard is significantly deferential and requires a "definite and firm conviction that a mistake has been committed." Id.

Conversely, legal conclusions from the bankruptcy court "are subject to plenary review by the district court and are considered de novo on appeal." Continental, 150 B.R. 334 at 336; In re Schaefer, 542 F.3d at 97. Mixed findings of fact and conclusions of law must be treated separately, and the applicable standards—"clearly erroneous" or de novo—must be appropriately applied to each component. Meridian Bank v. Alten,

6

958 F.2d 1226, 1229 (3d Cir. 1992) (citing In re Sharon Steel Corp., 871 F.2d 1217, 1222 (3d Cir. 1989) and Universal Minerals, Inc. v. C.A. Hughes & Co., 669 F.2d 98, 102-03 (3d Cir. 1981)). Ultimately, the question on review of a bankruptcy court's decision to impose sanctions is whether the bankruptcy court abused its discretion. Fellheimer, Eichen & Braverman, P.C. v. Charter Tech., Inc., 57 F.3d 1215, 1223 (3d Cir. 1995). The district court does not determine whether it would have imposed sanctions in the first instance. Id.

**IV.     Discussion**

Bankruptcy Rule 9011(c) grants bankruptcy courts the authority to impose sanctions upon attorneys who fail to abide by that rule's dictates. Rule 9011 directs attorneys to submit only those papers to the court that contain "claims, defenses, and other legal contentions therein [that] are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal or existing law or the establishment of new law …." Where an attorney fails to do so, the Bankruptcy Court may impose sanctions after notice and a reasonable opportunity to respond. See Bankr. Rule 9011(c). Rule 9011 sanctions are intended to be applied in exceptional circumstances, such as where a claim is "patently unmeritorious or frivolous." Dura Sys., Inc., v. Rothbury Inv. Ltd., 886 F.2d 551, 556 (3d Cir. 1989); see Ario v. Underwriting Members of Syndicate 53 at Lloyds for 1998 Year of Account, 618 F.3d 277, 297 (3d Cir. 2010) (discussing analogous Fed. R. Civ. P. 11 standard).

The Debtor raises several issues on this appeal: (1) whether there was good cause justifying the Bankruptcy Court's imposition of sanctions; (2) whether the Debtor's proposed chapter 13 reorganization plans were unconfirmable as a matter of law; (3)

whether the Bankruptcy Court erred in concluding that principles of res judicata and collateral estoppel were applicable to Debtor's Chapter 13 plans; and (4) whether the settlement in State Court nullified that aspect of the Bankruptcy Court's sanctions ruling that found Debtor's plans legally frivolous. Dahlgren does not challenge the monetary amount of the sanctions, and does not argue, with respect to the attorney's fees portion, that the fees were excessive. At the outset, the Court notes that the consent judgment entered in State Court after the Bankruptcy Court's sanctions ruling is irrelevant to this appeal—it is the state of the law at time of the sanctions ruling that is relevant. See Ford Motor Co. v. Summit Motor Prods., Inc., 930 F.2d 277, 289 (3d Cir. 1991); HT of Highlands Ranch, Inc v. Hollywood Tanning Sys., Inc., 590 F.Supp.2d 677, 693 (D.N.J. 2008).

Although stated as separate grounds for appeal, each of the remaining issues arise out of the Debtor's position that he should be able to treat co-tenant Palone as a secured creditor under a chapter 13 plan, rather than as a tenant in common with the Debtor. As the Bankruptcy Court below stated, the Debtor wishes to disregard the State Court Sale Order, and to treat Palone's co-tenancy ownership interest instead as a claim to be paid through chapter 13, with the Debtor essentially "buying out" Palone's interest in order to remain in possession of the Property. The Bankruptcy Court found that nothing in the Bankruptcy Code or relevant case law permitted the Debtor to disregard the effect of the Sale Order by treating Palone as a creditor, rather than as a co-tenant in common, and therefore denied the Debtor's reorganization plans. Dahlgran's counsel's decision to resubmit the same reorganization plan to the Bankrupcty Court a second time was the basis of the Bankruptcy Court's sanctions ruling. Thus, each of the Debtor's issues

essentially turn on whether the Debtor's reorganization plans were unconfirmable. Accordingly, the Court will review this issue first.

On that issue, the Bankruptcy Court held that the Debtor's plans were patently unconfirmable because "the interest of a co-owner of property may not be divested through a chapter 13 plan. Nothing in the Bankruptcy Code vests this right in a chapter 13 debtor." Bankruptcy Opinion at 11. The Bankruptcy Court based its reasoning in part on the fact that the right to sell the interest of a co-owner of debtor property under § 363(h)[6] of the Bankruptcy Code did not extend to chapter 13 debtors, and therefore the Debtor did not have the power under the Code to sell the interest of Palone.[7]

---

[6] [T]he *trustee* may sell both the estate's interest, under subsection (b) or (c) of this section, and the interest of any co-owner in property in which the debtor had, at the time of the commencement of the case, an undivided interest as a tenant in common, joint tenant, or tenant by the entirety, only if—

(1) partition in kind of such property among the estate and such co-owners is impracticable;

(2) sale of the estate's undivided interest in such property would realize significantly less for the estate than sale of such property free of the interests of such co-owners;

(3) the benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners; and

(4) such property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power.

11 U.S.C. § 363(h) (emphasis added).

[7] Although the Bankruptcy Code affords a chapter 13 debtor many of the rights and powers of a trustee, § 363(h) is not one of the enumerated powers transferred to a chapter 13 debtor. See 11 U.S.C. § 1303 ("[T]he debtor shall have . . . the rights and powers of a trustee under sections 363(b), 363(d), 363(e), 363(f), and 363(l) of this title."). For the

9

The Bankruptcy Court then turned to the Debtor's arguments regarding the partition of the Property. The Bankruptcy Court relied on Butner v. United States, 440 U.S. 48 (1979), for the proposition that state law governs property interests in bankruptcy. The Bankruptcy Court then held that it could not confirm the Debtor's plans because "nothing in New Jersey statutory or case law gives one co-owner of real property the right to forcibly acquire the interest of another co-owner." Bankruptcy Opinion at 11. To be sure, the Bankruptcy Court acknowledged that, under the current state of New Jersey property law in this area, the possibility existed that a state court might order such a sale of a co-owners property. But, in this case the State Court had already issued the Sale Order, and the "Debtor had the opportunity to request such a remedy . . . and failed to do so. Bankruptcy does not afford him a second chance to seek novel relief that he missed in state court." Id. at 13. The Bankruptcy Court denied confirmation of the Debtor's plan at that time, but provided the Debtor with a chance to file an alternate plan. When the Debtor resubmitted a modified plan that proposed the same treatment of Palone's co-ownership interest in the Property, the Bankruptcy Court again denied the plan and, pursuant to Palone's request, imposed sanctions.

Upon review, it is apparent that the Bankruptcy Court denied the Debtor's plans by applying the Rooker-Feldman doctrine. For the reasons that follow, this Court concludes that the Bankruptcy Court properly concluded that Rooker-Feldman precluded it from confirming Debtor's proposed reorganization plan. Thus, Debtor's Counsel's decision to resubmit the same plan a second time was sufficiently egregious to justify the imposition of sanctions by the Bankruptcy Court.

---

discussion of the Debtor's arguments pertaining to the applicability of § 363(h) to chapter 13, see *infra* note 15.

10

"Under the Rooker-Feldman doctrine, a district court is precluded from entertaining an action, that is, the federal court lacks subject matter jurisdiction, if the relief requested would reverse a state court decision or void its ruling." Taliaferro v. Darby Twp. Zoning Bd., 458 F.3d 181, 192 (3d Cir. 2006). Specifically, Rooker-Feldman bars claims in two circumstances: "(1) 'if the federal claim was actually litigated in state court prior to the filing of the federal action' or (2) 'if the federal claim is inextricably intertwined with the state adjudication, meaning that federal relief can only be predicated upon a conviction that the state court was wrong.'" In re Madera, 586 F.3d 228, 232 (3d Cir. 2009) (quoting In re Knapper, 407 F.3d 573, 580 (3d Cir. 2005)). "[A] federal claim is 'inextricably intertwined' with an issue adjudicated by a state court when (1) the federal court must determine that the state court judgment was erroneously entered in order to grant the requested relief, or (2) the federal court must take an action that would negate the state court's judgment." Id. Moreover, the Third Circuit has held that "this doctrine applies equally to federal bankruptcy courts." Id.[8]

Here, there is no dispute that both the State Court Sale Order and the Debtor's chapter 13 reorganization plans at issue involve the treatment of the Debtor's and Palone's interests in the Property. Therefore, the first inquiry in the Court's Rooker-Feldman analysis is to determine whether the State Court decision has final effect. See In re Madera, 586 F.3d at 232. Turning first to the record below, the Bankruptcy Court clearly treated the Sale Order as if it had the effect of a final judgment. Specifically, the

---

[8] Additionally, Rooker-Feldman applies only to "state court losers . . . complaining of injuries caused by [a] state court judgment [] rendered before the [federal] proceedings commenced and inviting [federal] court review and rejection of [that] judgment." Gary v. Braddock Cemetery, 517 F.3d 195, 201 (3d Cir. 2008) (quoting Exxon Mobil v. Saudi Basic Indust., Corp., 544 U.S. 280, 284, 125 S. Ct. 1517, 1521-22 (2005)).

11

Bankruptcy Court stated that "a default judgment was entered against [the Debtor] . . . . The judgment orders the sale of the [Property] and the proceeds to be held in trust until further determination by the court of the proper distribution thereof."  Bankruptcy Opinion at 3.

The Debtor, however, argues that the Sale Order is not a "final judgment" because "default has been entered against [the Debtor] and there has never been, and apparently will not be, a hearing conducted in the State Court action on the merits of [the Debtor]'s Answer and Counterclaim."  Appellant's Reply Br. at 14.  As noted previously in this Opinion, however, the record demonstrates that default was entered against the Debtor for failure to timely file an answer to Palone's partition action, after which the Debtor failed to appear at a subsequent cause hearing.  At the very least, it is apparent that the Debtor was provided ample opportunity to litigate the partition action in State Court, and after failing to do so, the State Court ordered the enforcement of the partition sale of the Property.

More importantly, however, whether the Sale Order constitutes an interlocutory order or a final judgment is immaterial to the application of Rooker-Feldman.  The doctrine applies regardless of whether the Sale Order represents a final judgment or an order.  See Port Authority Police Benev. Ass'n, Inc. v. Port Authority of New York and New Jersey Police Dept., 973 F.2d 169, 177-178 (3d Cir. 1992) (holding that Rooker-Feldman applies even to interlocutory orders from lower state courts); see also In re Knapper, 407 F.3d at 581 ("Rooker-Feldman does not allow a plaintiff to seek relief that, if granted, would prevent a state court from enforcing its *orders*.") (emphasis added) (quoting Walker v. Horn, 385 F.3d 321, 330 (3d Cir. 2004));  In re Randall, 358 B.R.

145, 159 n.9 (Bankr. E.D. Pa. 2006) ("The Supreme Court's Exxon decision did not expressly limit the scope of the jurisdictional doctrine only to final state court orders.") (citing Coquillette, et al., 18 Moore's Federal Practice, § 133.30[3][c][ii] (3d ed. 2006)).[9]

Significantly for the purposes of Rooker-Feldman, the Debtor does not dispute that before the Debtor's bankruptcy filing stayed the State Court litigation, the State Court had already ordered a partition sale of the Property and also had scheduled a hearing to apportion the proceeds of that sale. Nor does the Debtor dispute the enforceability of the Sale Order, or Palone's right to receive a share of proceeds from the sale of the Property.[10] Furthermore, contrary to Debtor's suggestion, that the State Court Sale Order was obtained by default has no effect on the finality and enforceability of that order.[11]

---

[9] Notably, the Third Circuit has declined to apply the doctrine where the record of state action is sparse. See Koynok v. Lloyd, 328 F. App'x 133, 137 (3d Cir. 2009) ("Neither the parties nor the District Court provided information or court records demonstrating what the court decided in Koynok's first state court proceeding. To properly apply Rooker-Feldman, the first necessary step is to determine exactly what the state court decided."). Here, however, as stated throughout the parties' papers, there is no dispute that the State Court ordered a partition sale of the Property, and thus Koynok's requirement of a state court record is satisfied. Indeed, "absent the state court's judgment . . . [the Debtor] would not have the injury he now seeks to redress," and therefore Rooker-Feldman operates to bar the Debtor's proposed plans and appeal therefrom. See S. Washington Ave., L.L.C. v. Wilentz, Goldman, 259 F. App'x 495, 498 (3d Cir. 2007) (quoting Holt v. Lake County Bd. of Comm., 408 F.3d 335, 336 (7th Cir. 2005)).

[10] Indeed, the Debtor states, contrary to his other arguments, that the Sale Order gave Palone a "right to be paid money for whatever net value her percentage ownership would yield upon a future sale of the co-owned real property" on the date of the Debtor's bankruptcy filing. Appellant's Br. at 17-18.

[11] Under New Jersey law, a default judgment entered by a court is "left undisturbed unless it results from a clear abuse of discretion." Pressler, Current N.J. Court Rules, comment 1 on R. 4:50-1 (2010). For such a judgment to be vacated, "the [defendant's] failure to answer or otherwise appear [must be] excusable under the circumstances and . . . the defendant [must have] a meritorious defense …." Id., comment 4.1. The State

Notwithstanding this understanding of the State Court Sale Order, the Debtor twice proposed chapter 13 reorganization plans in which the Debtor would obtain sole ownership of the Property by means of "purchasing" Palone's co-ownership interest outright from Palone. The Bankruptcy Court reasoned, however, and this Court agrees, that confirming either of the Debtor's chapter 13 plans would amount to treating the interests in the Property differently than the State Court did in the Sale Order. Specifically, if the Bankruptcy Court were to confirm one of these plans and treat Palone solely as a creditor, Palone would effectively lose her co-ownership interest in the Property and would be unable to enforce the Sale Order in State Court. This result is precisely what Rooker-Feldman bars. See In re Madera, 586 F.3d at 232 (upholding the bankruptcy and district court's application of Rooker-Feldman to bar the plaintiff's mortgage rescission claim because a "favorable decision for the [the plaintiff] in the federal courts would prevent the [state] Court of Common Pleas from enforcing its order to foreclose the mortgage") (citing In re Knapper, 407 F.3d at 581); see also In re Giberson, 260 B.R. 78, 83 (Bankr. D.N.J. 2001) ("The debtors nevertheless ask this court to disregard the state superior court order, and to adjudicate and administer the property as part of the bankruptcy estate. The court does not have jurisdiction to do so because of the Rooker-Feldman doctrine."). Notably, courts in this Circuit have applied Rooker-Feldman to preclude their consideration of a federal claim that also implicates a state court partition action. See, e.g., Cranbury Brook Farms v. Twp. of Cranbury, 226 F. App'x 92, 95 (3d Cir. 2007) ("To the extent Appellants challenge the way in which the partition proceedings were conducted in state court, their claims cannot be raised in a

---

Court Sale Order has not been vacated, and the parties' subsequent settlement does not undercut the validity of that order at the time that it was entered.

14

subsequent federal action such as this."); Poling v. K. Hovnanian Enters., 99 F. Supp. 2d 502, 513-14 (D.N.J. 2000) (applying Rooker-Feldman to bar plaintiff's federal antitrust claim involving property that was simultaneously involved in pending New Jersey state court partition action); cf. Moncrief v. Chase Manhattan Mortg. Corp., 275 F. App'x 149, 153 (3d Cir. 2008) ("Here, at least in part, Moncrief seeks redress from the state court's judgment in the foreclosure action.  Accordingly, to the extent that Moncrief seeks to 'appeal from' the state court's foreclosure judgment, the District Court correctly dismissed the claim under Rooker-Feldman.") (citation omitted).  Simply put, if the Debtor contests the appropriateness of the Sale Order, his proper form of redress is an appeal within the New Jersey state courts, and not in the Bankruptcy Court or this Court.[12]  See Poling, 99 F. Supp. 2d at 513-14 ("If plaintiffs wish to challenge the partition . . . they should do so in the pending state court action.") (citation omitted).

The Debtor nevertheless contends that when Palone filed a proof of claim in the Bankruptcy Court, she subjected herself to the "personal and equity jurisdiction of the U. S. Bankruptcy court, and to having her claim and interest as a non-debtor co-owner of real property addressed and paid through the Debtor's Chapter 13 Plan."[13]  Appellant's

---

[12] The Bankruptcy Court came to this same conclusion: "[I]n the case at hand, sale of the property has been ordered by the state court. . . .  This court would not be justified in confirming a plan that abrogates that order. . . .  The [New Jersey] Chancery Division, Family Part, is the appropriate venue . . . ."  Bankruptcy Opinion at 14 (internal quotations and citations omitted).

[13] Further, as noted supra in note 9, the Debtor argues that the Sale Order gave Palone a "right to be paid money for whatever net value her percentage ownership would yield upon a future sale of the co-owned real property" on the date of the Debtor's bankruptcy filing.  Appellant's Br. at 17-18.  Based on this, the Debtor argues that Palone holds a claim in bankruptcy against the Debtor.  The Debtor further reasons, without providing any supporting authority, that the Sale Order somehow converted Palone's co-tenancy ownership interest in the Property into liability owed to Palone by the Debtor.  Thus, the

15

Br. at 18. Although failing to provide any relevant law from this Circuit to support his argument, the Debtor is partially correct in that filing a proof of claim generally subjects the filing party to the bankruptcy court's jurisdiction for that claim. See, e.g., Lagenkamp v. Culp, 498 U.S. 42, 45 (1990). However, the Debtor does not provide any basis for his argument that Palone's mere act of filing a proof of claim divests her of her legal ownership interest in the property.[14] In sum, Rooker-Feldman prevents both the Bankruptcy Court and this Court from exercising jurisdiction over the partition of the Property, which is the basis for the Debtor's proposed chapter 13 reorganization plans.[15]

---

Debtor concludes, upon the Debtor filing of a Bankruptcy petition, Palone's interest in the Property constituted a secured claim against the Debtor. Like the Bankruptcy Court below, this Court rejects the Debtor's argument—the Debtor provides no bankruptcy code or case law in a chapter 13 case that would allow the Debtor to disregard Palone's valid co-ownership interest in the Property, and instead to treat her as a creditor.

[14] Significantly, Palone's "proof of claim" filing states that "The creditor [Palone] believes she is a co-owner in real estate and not a secured creditor, unless determined by the Court to be so, and that is the reason this claim is filed." Thus, despite the Debtor's attempt to convince this Court otherwise, Palone's did not relinquish her ownership interest in the Property through her proof of claim.

[15] Additionally, the Court notes that one of the Debtor's arguments below is that the Bankruptcy Court erroneously refused "to consider 11 U.S.C. § 363(h) to be applicable to Chapter 13 cases, even though there is case law to contrary." Despite the fact that the Debtor primarily supports this argument with irrelevant cases, it appears that,

> [a]t least four courts have stated that a [chapter 13] debtor may sell property free of the interests of a co-owner pursuant to § 363(h). See In re Belyea, 253 B.R. 312, 314 (Bankr. D.N.H. 1999); In re Rishel, 166 B.R. 276, 278 (Bankr. W.D. Pa. 1994); In re Janoff, 54 B.R. 741, 742 (Bankr. D.N.J. 1985); In re Yakubesin, 83 B.R. 462, 466-68 (Bankr. S.D. Ohio 1988). Belyea and Rishel are based on a theory of incorporation holding that § 363(h) is included within § 1303 by virtue of § 363(b). In Janoff the court denied the debtor's motion for summary judgment but stated in dicta . . . that the debtor was empowered under § 363(h) to sell property including the interest of a co-owner. Yakubesin states no basis for its conclusion that a chapter 13 debtor can use § 363(h).

16

Therefore, returning to the issue of sanctions, this Court concludes that the Bankruptcy Court was within its discretion to impose sanctions. The Debtor twice submitted reorganization plans that were patently unconfirmable based on their proposed treatment of Palone's interest in the Property. Based on the Debtor's failure, and apparent reticence, to provide a confirmable plan or treatment of Palone's interest in the Property, the Bankruptcy Court properly concluded that Debtor's counsel violated Bankruptcy Rule 9011 by presenting a legal claim unsustainable under existing law and by failing to put forth a nonfrivolous argument for the extension, modification, or reversal of existing law. <u>Rooker-Feldman</u> clearly barred the Bankruptcy Court from approving Dahlgren's reorganization plan, and Debtor has not pointed to any case law suggesting that the Bankruptcy Court's application of <u>Rooker-Feldman</u> was inappropriate.

Finally, Dahlgren's Counsel argues that his conduct was not sufficiently egregious to justify the imposition of sanctions. He argues that the treatment of a co-owner's interest was a matter of first impression and, therefore, that the reorganization plan was not based on frivolous legal grounds. Dahlgren's argument misses the mark.

---

<u>In re Wrublik</u>, 312 B.R. 284, 285-86 (Bankr. D. Md. 2004). However, even if the Court were to accept this minority application of § 363(h) to chapter 13 cases, and even if the application of § 363(h) to the Property did not implicate <u>Rooker</u>-<u>Feldman</u>, neither of which the Court believes appropriate, § 363(h) still does not grant the Debtor the relief he seeks to force Palone to sell her co-ownership interest to him, because § 363(h), if applicable, would allow the Debtor to sell <u>both</u> his interest and Palone's interest in the Property; it would not allow the Debtor to force Palone to sell only her interest to him.

However, because the Court concludes that both this Court and the Bankruptcy Court lack jurisdiction to entertain the Debtor's proposed plan and appeal, this Opinion does not reach the merits of the Bankruptcy Court's order. Nevertheless, it is worth nothing that, notwithstanding <u>Rooker</u>-<u>Feldman</u>, the Debtor has failed to provide either the Bankruptcy Court or this Court with any law that grants a chapter 13 debtor the right or power to "buy-out" the interest of a non-debtor co-owner of debtor property.

17

The pertinent question here is whether <u>Rooker-Feldman</u> barred the Bankruptcy Court from entering his reorganization plans, not whether New Jersey might reinterpret its property law in a manner suitable to Dahlgren.  And, the application of <u>Rooker-Feldman</u> to his plans was certainly not a matter of first impression.  While the Bankruptcy Court, in its November 9, 2009 opinion, also considered at length whether New Jersey law permitted the treatment of a co-owner in the manner that Dahlgren advocated, it is the Bankruptcy Court's application of <u>Rooker-Feldman</u>—that Dahlgren's counsel failed to properly appreciate— that underlies its ruling and is the basis for this Court's affirmation of the Bankruptcy Court's decision.  Indeed, Debtor's counsel's failure to appreciate this uncontroverted area of law, and to present it a second time to Judge Lyons, constitutes an exceptional circumstance that justifies the imposition of sanctions.

## <u>Conclusion</u>

For the foregoing reasons, the Court AFFIRMS the Bankruptcy's Courts order imposing sanctions on counsel.  An appropriate Order shall follow.

<u>/s/ Freda Wolfson</u><br>
United States District Judge

DATED: December 16, 2010